S10A1361. MPP INVESTMENTS, INC. v. CHEROKEE BANK, N.A. et al.
S10A1363. HOWE v. CHEROKEE BANK, N.A. et al.
(707 SE2d 485)

CARLEY, Presiding Justice.

On April 30, 1998, Old Roswell Investments, LLC executed a promissory note and a security deed encumbering property in Roswell, Georgia in favor of Etowah Bank. On October 29, 1998, Old Roswell signed a promissory note in favor of J. Douglas Howe and executed a security deed naming Howe as grantee on the same property. The maturity date in Howe's security deed was September 28, 2001. Etowah Bank subsequently merged with Regions Bank,

and in June 1999, Old Roswell executed a modification agreement replacing Etowah Bank with Regions Bank as the lender on the April 30, 1998 promissory note and security deed. At this time, Howe signed a subordination agreement providing that his security deed was subject to and inferior to the security deed held by Regions Bank. In December 2006, Old Roswell executed a security deed on the same property in favor of Cherokee Bank, N.A., to secure a note evidencing a new loan, the proceeds of which were used to satisfy the promissory note held by Regions Bank.

In early September 2008, Howe began the process to effect a sale under power pursuant to his security deed. On November 24, 2008, Cherokee Bank filed a petition to quiet title on the subject property, claiming that it possessed the first priority secured interest in the property. Cherokee Bank also recorded a notice of lis pendens. Cherokee Bank then filed an action seeking injunctive relief against Howe's foreclosure proceedings. A hearing was held on November 25, 2008, and a temporary restraining order was consented to by all of the parties to reschedule the foreclosure sale for January 6, 2009 in order to allow the parties time to try to settle the case. A special master was appointed by the trial court on December 30, 2008. On January 6, 2009, Howe foreclosed on his security deed and executed a deed under power to MPP Investments, Inc., the highest bidder for value.

A hearing was held before the special master on July 30, 2009. The primary issue argued at the hearing was whether title under Howe's security deed had reverted to Old Roswell prior to Howe's initiation of the sale under power pursuant to OCGA § 44-14-80 (a) (1), which provides that title under a security deed will automatically revert to the grantor seven years after the maturity date of the underlying secured indebtedness. After the hearing, the special master requested additional briefing on the issue of whether the failure by Howe to provide 60-days notice to Old Roswell to cure default before initiating foreclosure proceedings, as stipulated in Howe's security deed, voids the foreclosure sale. The notice provision in Howe's security deed states, in relevant part:

> [I]n case the debt hereby secured shall not be paid when it becomes due by maturity in due course, or by reason of default as above provided, [Howe] agrees to (a) notify [Old Roswell] in writing of such default, specifying the nature thereof and the actions necessary to cure said default; and (b) permit [Old Roswell] to cure such default within sixty (60) days from the date of such notice. . . . If, after receipt of notice and the opportunity to cure specified above, [Old Roswell] is unable to cure said default, [Howe] . . . may sell

the said property at auction . . . to the highest bidder for cash. . . .

On October 8, 2009, the special master filed her report, concluding that Howe failed to follow the proper procedure required by the security deed by not providing 60-days notice to Old Roswell, that the sale under power to MPP Investments was therefore void, that the title of the property reverted to Old Roswell pursuant to OCGA § 44-14-80 (a) (1), and that Cherokee Bank holds a first priority security deed on the property. The trial court adopted the special master's report, and Howe and MPP Investments (Appellants) filed separate notices of appeal. The two cases are hereby consolidated for disposition in this single opinion.

1. Appellants first contend that the issue of whether Howe properly served notice to cure to Old Roswell 60 days prior to initiating foreclosure proceedings, as stipulated in Howe's security deed, was waived since the issue was neither raised at the hearing on November 25, 2008 nor specifically included in the pre-trial order. However, the record shows that the hearing on November 25, 2008 related solely to a request filed by Cherokee Bank for a temporary restraining order and, thus, was a preliminary hearing on an issue separate from the underlying quiet title claim. Moreover, at the time of the initial pleadings in this case, the only issue related to determination of the competing interests arising from the security deeds held by Howe and Cherokee Bank. No foreclosure sale had taken place. However, once the foreclosure sale conducted by Howe was completed, Cherokee Bank properly amended its petition to include the issue of whether the foreclosure sale was validly conducted.

Appellants' argument that the 60-day notice issue was not included in the pre-trial order is also without merit. "[A] pretrial order 'should be liberally construed to allow the consideration of all questions fairly within the ambit of the contested issues.' [Cits.]" *Parks v. Breedlove*, 241 Ga. App. 72, 73 (1) (526 SE2d 137) (1999) (ruling an issue preserved even though not listed in pre-trial order because it was included in a proposed verdict form that was part of the pre-trial order). The pre-trial order in this case specifically lists as substantive issues whether the foreclosure sale was validly conducted and, if not, whether title under Howe's security deed reverted to Old Roswell pursuant to OCGA § 44-14-80 (a) (1). The 60-day notice issue directly relates to whether the foreclosure sale was validly conducted because Howe is legally required " " "to advertise and sell the property according to the terms of the [security deed]. . . ." (Cits.)' [Cit.]" *Kennedy v. Gwinnett Commercial Bank*, 155 Ga. App. 327, 330 (1) (270 SE2d 867) (1980). The 60-day notice

requirement is a term in Howe's security deed that must be followed before he can exercise the power of sale contained in said deed.

Finally, OCGA § 23-3-66 gives the special master "complete jurisdiction within the scope of the pleadings to . . . determine the validity . . . [of] all . . . interests in the land. . . ." An amended pleading properly filed by Cherokee Bank included the claims that the foreclosure sale was improper and that title under Howe's security deed had reverted to Old Roswell pursuant to OCGA § 44-14-80 (a) (1). The pre-trial order contained the issues of the validity of the foreclosure sale and reversion of Howe's security deed. A copy of Howe's security deed with the 60-day notice provision was filed with the court. Therefore, the special master, in accordance with her "complete jurisdiction," was entitled to review the pleadings as well as any evidence to determine the valid interests in the property. This inquiry would necessarily include whether the foreclosure sale was invalid because Howe failed to provide 60-days notice to Old Roswell.

2. Appellants also contend that Cherokee Bank is estopped from asserting that title reverted to Old Roswell under Howe's security deed because this specific issue was not raised prior to the foreclosure sale. However, in order to have a valid claim of estoppel, "the one who purchased . . . the property [must have been] unaware of the true nature of the title and . . . [must have] relied upon the silence of the true title owner. [Cit.]" *Clarence L. Martin, P.C. v. Chatham County Tax Commissioner*, 258 Ga. App. 349, 353 (574 SE2d 407) (2002). The evidence in the record shows that Cherokee Bank filed suit claiming superior title to the property and recorded a notice of lis pendens well in advance of the foreclosure sale. MPP Investments, the purchaser of the property, admitted at the hearing before the special master that it knew of the suit against the property, but decided to purchase it anyway. Furthermore, MPP Investments also admitted at that hearing that since Howe's security deed was public record, it had notice of both the maturity date on the security deed and the date on which automatic reversion could occur pursuant to OCGA § 44-14-80 (a) (1). Therefore, MPP Investments had constructive and actual knowledge of Cherokee Bank's assertion of superior title and the possibility that title to the property pursuant to Howe's security deed had reverted. Finally, there is no evidence that MPP Investments "relied in any way upon [Cherokee Bank's] actions, silence, or inactions" in this matter. *Clarence L. Martin, P.C. v. Chatham County Tax Commissioner*, supra. Accordingly, the claim of estoppel is without merit.

3. Appellants next contend that Howe was not required to give Old Roswell 60-days notice before exercising his power of sale, because the promissory note executed by the parties states that "in

case [of a] default[,] . . . all unpaid principal and all interest . . . shall . . . become due and payable, *without demand or notice.* . . ." (Emphasis supplied.) Appellants argue that this provision in the promissory note that requires no notice directly conflicts with the provision in the security deed that requires 60-days notice. Therefore, according to Appellants, Howe only needed to satisfy the no-notice provision in the promissory note because " ' " "if the note and [security deed] contain conflicting provisions, the note will govern, as being the principal obligation." ' " [Cits.]" *Finlay v. Oxford Constr. Co.,* 139 Ga. App. 801, 802 (1) (230 SE2d 69) (1976).

In the present case, the special master concluded that the notice provisions in the promissory note and the security deed do not conflict and thus both are valid. The special master reasoned that the notice provision in the promissory note applies when the underlying debt is to be accelerated, and the notice provision in the security deed applies when the holder elects to exercise his right to conduct a non-judicial foreclosure sale pursuant to the power of sale contained in that instrument. "The construction of a contract is a question of law for the court." OCGA § 13-2-1. Where the language of a contract "is undisputed, but the meaning of that language is in dispute[,] . . . 'it remains the duty of the . . . court to look to the language of the contract with a view to effectuating the intent of the parties.' [Cit.]" *Sewell v. Hull/Storey Development,* 241 Ga. App. 365, 367 (1) (526 SE2d 878) (1999).

As the special master noted, the notice provisions in the note and the security deed contain differing language. The note refers to a default in any of the payments on the debt evidenced by the note and specifies that Howe may, if there has been a default, demand that "all unpaid principal and all interest then accrued on principal or interest . . . [be] due and payable." In short, this clause provides the procedure for the acceleration of the underlying debt. However, the language in the security deed refers to when the underlying debt "becomes due by maturity in due course, or by reason of default as above provided" and then states that if, "after receipt of [60-days] notice and the opportunity to cure . . . , [Old Roswell] is unable to cure . . . , [Howe] . . . may sell the said property at auction. . . ." Therefore, this language gives Howe power of sale authority and provides the procedure for exercising that authority. The note does not provide Howe with a power of sale, and the security deed does not give Howe the right to accelerate the underlying debt. Therefore, as the special master concluded, the separate notice provisions "are dealing with different points in the life cycle of the note and security deed" and thus do not conflict. Since the provisions do not conflict, both are enforceable. *Duncan v. Lagunas,* 253 Ga. 61, 63 (2) (316 SE2d 747) (1984) (holding that where the security deed requires no

notice to accelerate and the promissory note is silent as to any notice to accelerate, then there is no conflict and the provision in the security deed should be enforced). Thus, Howe was required to give Old Roswell 60-days notice of the right to cure the default before exercising his right to initiate a non-judicial foreclosure sale.

4. Appellants next contend that, if 60-days notice was required, then the letter sent by Howe to Old Roswell on September 4, 2008, constituted sufficient notice of default. Although this letter provided all of the information required by the notice provision in the security deed, it also stated that the property was being advertised for a foreclosure sale scheduled to take place on October 7, 2008. Furthermore, foreclosure notices were published in the Fulton County Daily Report on September 8, 15, 22, and 29, 2008. Therefore, this notice letter was not sent 60 days before Howe initiated his right to foreclose on the property. Compare *Salahat v. Federal Deposit Ins. Corp.*, 298 Ga. App. 624, 627-628 (1) (680 SE2d 638) (2009) (holding that, where ten-days notice was required before accelerating the promissory note, but the notice letter sent by the bank demanded immediate payment, the notice letter was still sufficient because the bank did not accelerate the debt until ten days had lapsed). Since no notice was sent by Howe to Old Roswell 60 days before the initiation of the power of sale, then the foreclosure process was not properly commenced and is thus invalid. Therefore, since valid foreclosure proceedings were not initiated before September 28, 2008, seven years after the maturity date of the underlying debt, title under Howe's security deed reverted to Old Roswell pursuant to OCGA § 44-14-80 (a) (1).

5. MPP Investments contends that, even if the foreclosure proceedings were not properly commenced by Howe, the title to the property purchased by MPP Investments at the foreclosure sale is still valid because MPP Investments qualifies as a bona fide purchaser for value pursuant to OCGA § 23-1-20. They cite *Ellis v. Ellis*, 161 Ga. 360, 362 (1) (130 SE 681) (1925), for the proposition that a bona fide purchaser takes good title irrespective of the actual existence or non-existence of a default. However, the present case is distinguishable in several respects from *Ellis*. First, this Court stated in *Ellis* that the purchaser was "without notice or reasonable grounds to suspect" that anything was amiss with the foreclosure sale. *Ellis v. Ellis*, supra. She "believed that she was getting a good title." *Ellis v. Ellis*, supra. In the present case, due to the lis pendens and the recorded security deed held by Cherokee Bank, MPP Investments cannot claim to be without notice that they may not have been purchasing a good title at the foreclosure sale. Second, this Court in *Ellis* stated that the claimant seeking to set aside the foreclosure sale "took no steps to stop the sale . . . [or] warn persons

attending the sale" that he held proper title. *Ellis v. Ellis*, supra at 363 (1). The Court in *Ellis* emphasized that it was the "[n]egligence [of the claimant that] will protect a bona fide purchaser." *Ellis v. Ellis*, supra. Here, there is no allegation that Cherokee Bank has been negligent in any way. In fact, Cherokee Bank took many steps to assert and to warn persons attending the sale of its interest in the property. Therefore, *Ellis* is not controlling in this case.

Moreover, OCGA § 23-1-20 protects only those purchasers who are "without notice of an equity." As stated above, MPP Investments admitted that it had actual knowledge of the quiet title action filed by Cherokee Bank as well as the recorded lis pendens before purchasing the subject property at the foreclosure sale. Moreover, it is undisputed that Howe's security deed was recorded with the maturity date clearly set forth, and, thus, MPP Investments was on constructive notice that the date of the reversion of the title interest, pursuant to OCGA § 44-14-80 (a) (1), had occurred before the foreclosure sale. In fact, MPP Investments admitted that it had constructive notice of this fact at the hearing before the special master. Finally, the purpose of the bona fide purchaser doctrine is to protect the innocent purchaser from the true title owner " 'who stands silently by and permits such purchaser to act to his own injury, or who is guilty of laches in not sooner asserting a mere secret equity.' " *Mathis v. Blanks*, 212 Ga. 226, 227 (2) (91 SE2d 509) (1956). In the present case, Cherokee Bank did not silently stand by with a "secret equity," but took numerous actions to stop the foreclosure sale and to warn persons attending the sale that it was asserting a first priority secured interest in the property. Cherokee Bank did all it could do to impart notice of its interest in the property, and MPP Investments clearly admits that it had actual and constructive knowledge of the interest asserted by Cherokee Bank. Thus, MPP Investments is not entitled to the protection accorded to bona fide purchasers.

6. MPP Investments next contends that the trial court erred by failing to grant its motion for an oral hearing on its exceptions to the special master's report. However, OCGA § 23-3-67 "does not require a trial court . . . to conduct a hearing before adopting the special master's report . . . [and does not require] a trial court . . . to hear exceptions to a special master's report. . . ." *Steinichen v. Stancil*, 281 Ga. 75, 76 (2) (635 SE2d 158) (2006). In fact, a trial court is entitled "to enter judgment at any time it [chooses] and . . . could have done so before any exceptions were filed by [MPP Investments]." *Steinichen v. Stancil*, supra at 77 (2). Therefore, if a trial court may adopt the special master's report and enter judgment even before a party has a chance to file exceptions to the report, then it cannot be error for the trial court to fail to hold an oral hearing on

any exceptions before entering judgment.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 10, 2011 —
RECONSIDERATION DENIED FEBRUARY 28, 2011.

*Lefkoff, Duncan, Grimes, McSwain & Hass, John R. Grimes, Heather M. Malick,* for MPP Investments, Inc.

*Baker, Donelson, Bearman, Caldwell & Berkowitz, Dylan W. Howard, Linda S. Finley,* for Cherokee Bank, N.A. et al.

*William H. Arroyo,* for Howe.